Let's call the next case. 3-0-9-0-2-7-6, Derrick Stone v. Timber Creek. You may proceed. Good morning, Your Honors. My name is Ryan Meikamp with Strong Law Offices, and I represent Ms. Stone. What's your last name? Meikamp, sir. And I represent Ms. Stone concerning her appeal. I believe that the decision issued by the arbitrator, the Workers' Compensation Commission, as well as the circuit court in Tazewell County are all in error. I believe that the decisions they have made are against the manifest weight of the evidence. I believe that the facts surrounding Ms. Stone's accident are not really in dispute in this case. I think the main issue that we need to discuss is more of a situation concerning accident. I believe that the previous finders of fact have found that no accident did, in fact, exist or did, in fact, take place, and that's why they have denied benefits in this case. But they say no accident had taken place or that the injury did not arise out of the course of her appointment. I believe the latter is correct, Your Honor, and that's what I'm going to discuss here briefly. Nobody's disputing that she fell getting out of this trailer, are they? No, sir. Okay. And that's where the first evaluation comes in, the arising out of leg of accident. And I believe that the arising out of the leg of accident is found by the fact that Ms. Stone was clearly exposed to a greater risk than the general public when she was entering and exiting this vehicle. This was not a vehicle that the general public was getting into. I don't believe that an argument can be made that this system or this situation was set up for the general public to be buying this clothing from Scrubs on Wheels. I think this was clearly a system set up specifically to solicit the employees of the respondent in this case. Well, did she, did the claimant's shopping in the Scrubs trailer, did that fall within the category of acts that she would be expected to do to fulfill her duties? I mean, why is she in this trailer? I believe that she was in this, in the trailer to comply with her employer's policy of making the employee wear scrubs. I feel that the employer in this case benefited a great deal from the fact that they had their employees have a dress code and that that dress code, if it was not met, the employees would face consequences for that. So would she also recover if she tripped and fell in a department store when she was buying uniforms? I don't believe she would, Your Honor. What's the difference? I believe that this case is different because of the fact that her employer acquiesced to this trailer being put on its property. They allowed the trailer to be put on the property. They only allowed this specific company to bring their trailer onto the property, and they specifically excluded every other business and other solicitors who wished to come on their property. But isn't it part of her duties to go into this trailer? I mean, you know, it's there as a convenience. If they have meals on wheels, they're doing, you know, somebody goes and takes a coffee break and falls down. I mean, you're saying in your analysis the employer invited this person there. It's like some kind of an attractive nuisance or something or attractive shopping opportunity, and therefore that makes it within the scope of her duties? Well, I believe that she was clocked in, Your Honor. I believe that at the time she was performing or was on the clock, so was being potentially paid. Her employer, her supervisor gave her permission to go to this vehicle and to peruse the wares that were being offered by Scrubs on Wheels. I think it's a situation where the Christman case found in Commissioner Mason's dissent shows that basically it's a, in that case, a fall that happened 25 minutes before the Petitioner actually started their day, was found compensable. In this case, there was only, there was significantly less time than 25 minutes. It was more like 5 or 10 minutes at the most. She testified that she had permission to go out there while she was working. Is that what Maldovazo testified to? No, it's not, Your Honor. Your Honor, I think there is kind of a dispute there in that I believe that the facts show that she was given permission to go out there. I believe the record indicates that she was told she had to be back to start her shift. Nonetheless, she was, in fact, on the clock at the time of her accident. Maldovazo testified that the employees were not permitted to visit the trailer while they were working. And is it not a matter of fact that the employer issued her a written reprimand? That is the case, Your Honor. However, I do believe that, as I mentioned previously, she was, in fact, on the clock. So I feel that that is significant when determining whether this case does arise out of and is in the scope of her employment. You may make that argument. And, you know, again, it has some logical basis to it. However, would you at least concede, though, going to the trailer to purchase scrub is not a part of her job on the work site? Is she supposed to go? Is that what she does? Is she supposed to go purchase supplies from the scrubs place and bring them back for, you know, for the benefit of the employer? Or is she going there to purchase scrubs for her to use, which she could go to a department store at any time? I would say that it certainly was not within her job description to go and pick up scrubs. But I do feel that she was compelled by her employer to do that. If she did not wear the required uniform, she would not be able to perform her duties. But she wasn't required to buy them from scrubs. No, she was not, Your Honor. I do think, though, that it is important to take into account that this policy of the employer of involving or having the employees wear required uniforms and the subsequent scrubs on wheels situation came about, does further the employer's business interest. I think that it allowed for the employees to more easily meet the dress code that the employer had put down. It shows that the employees or the business is well run, that the employees are well kept. I think it also, the record shows that this allowed for an ease of affordability for the employees to meet the employer's dress code and that it allowed them to take deductions from their pay as opposed to having to pay up front. These are people generally, my understanding is that these are people generally who don't make very much money and it allowed the employees to meet the dress code much more easily. Secondly, I think that it's important to take into account that I think that the personal comfort doctrine does come into play here. To some extent, I think that my client's behavior with regard to her actions on that date were reasonable. I don't believe that this was any type of frolic by my client with regard to heading over to the scrubs on wheels. I think that she took a reasonable action and for someone in her position, if an opportunity was presented to where she could potentially buy the required uniform stuff and it was right there in the parking lot, I think a reasonable person would go out there and peruse those things. I don't think that it's counsel's argument in the Dodson and Hatfield cases are appropriate. I think that this is not a case where my client took a shortcut or anything similar to that. I don't think that those cases are on point at all. Additionally, I don't feel that the Walmart or the First Cash cases are relevant either in that this is not a, she's not falling, she did not fall in a public parking lot. This is an additional risk that's been placed in the parking lot. It's not just a parking lot like in the Walmart and the First Cash cases. I think this is merely a situation where the vendor's vehicle was allowed on the premises by the employer to further its business interest with regard to the dress code. That being said, I would ask that you find that the decision of the previous finders of the fact is against the manifest weight of the evidence and issue an order in accordance with that. Thank you very much. Thank you, counsel. You may respond. Thank you, Your Honor. May it please the Court. Counsel, my name is John Kamen. On behalf of the employer, Timber Creek Rehab, we would ask that the circuit court's decision in affirming the industrial commission decision be affirmed as the arbitrator and commission's conclusions that this injury did not arise out of in the course of the employment. In this particular case, she went to the trailer to check prices to see if she can buy scrubs cheaper there than at the Christian Outreach where she usually bought her scrubs. Judge, you're right that she could go to a department store. And there's no evidence that this was the exclusive place where she could buy scrubs, and there was really no evidence that this was the exclusive vendor. It was the only vendor that would offer this service, but this is a service that was offered as a convenience to employees off work hours. It does not deal with their work duties. The difference between this and going to the department store is it's in the parking lot, the public parking lot of this particular nursing home. And I think the cases here that the petitioner cites to assert that this is contrary to the manifest way of the evidence are clearly distinguishable. First, the Homerding case and the Litchfield case. In both those cases, someone had clocked into work and then had forgot something they needed for work and had to go out to their vehicle to retrieve something so they could perform their work duties. And in both those cases, the first, there's a slip and fall on ice in the parking lot that the employees were required to park in. In the second case, there's a trip and fall on a crack in the sidewalk that is in the employer's premises. And in both those cases, this Court said the employer has created this risk of injury, and they were, in the course of employment, doing things that were necessary to complete their assigned job duties. We have cited to the Court Dodson and Hatfield. Those are cases where detours were made, but the premise of those decisions, one was slipping on a grassy slope, again, on the employer's premises. One was jumping over a puddle and injuring themselves, again, on the employer's premises. In both those cases, those individuals are doing that for their personal convenience, and the Court said that this is not the type of injury that we're going to find that is compensable and reverse the industrial commission. Your report raises the specter of the personal comfort doctrine. Why doesn't this fall under the personal comfort doctrine? In those cases I cited, Your Honor, I'm referencing personal convenience, and if something is for personal convenience in their activities, that would render it not compensable. Personal comfort cases are found compensable, but this is not a personal comfort doctrine that addresses whether somebody steps out of the course of their employment when they're already in performing their regular job duties, and they need to do something for their own personal comfort that is completely anticipated by the employer which is get a drink of water at the water fountain, go get a refreshment, use the facilities. I think there may be a case out there, take a smoke break. Those are the things that are personal comfort that are done during the course of a workday that this Court and the commission have said you have to expect that your employees will do. Can it be expanded by permission? Now, granted that there was some dispute over whether or not the supervisor knew she had clocked in, is there any dispute that the supervisor gave her permission to go to the trailer? That's not disputed, is it? I don't think there's any contrary evidence other than the fact that she had written up for going on the clock, but I don't think there is any direct evidence, and I think it's a reasonable inference for the commission to draw, that the supervisor was not aware that the person had clocked in at this time. Let me talk about that. I'm distinguishing that. I realize it's disputed. Is there any dispute that she was given permission to go to the trailer? Forget about whether she was clocked in. No. There is no dispute that any employee can go there before or after work hours and shop for scrubs. I think what brings this case even farther away from the decisions like Dotson and Hatfield, which are found non-compensable, is that what created the risk of this injury was not created by the employer. It was created by scrubs on wheels, if anything, based upon the fact that it was a stair or an appliance that was on this trailer that was not within the possession or control of the employer that resulted in this injury on what should have been off work hours. Whether or not it was in the possession or control of the employer, is that the test of whether or not it would be compensable? Yes. Whether or not it's in the, you know, arising out of? In determining whether or not it's arising out of, yes, because it has to be something that's incidental to the employee. The arising out of tests that the Supreme Court and Caterpillar brought down are, were you instructed to do it? Clearly not. You were not, she was not instructed to do it in this case. My understanding, you started talking about the trailer having some defective stair, let's say. Correct. Okay. If the employer would have asked her as part of her duties to go to scrubs and get something and she fell, the fact that there's a defective stair really doesn't take it out of compensability, does it? Well, I think if she's ordered to do it by the employer and it's a reasonable act and she's injured, then it's compensable. Right. The fact that it's not the employer's premises doesn't really have anything to do with it, does it? Right. Well, the fact that, well, if she becomes, if she goes off premises and becomes a traveling employee, no. But if it's a neutral risk and there's no problem with this stair and it's determined the stair didn't cause injury, then yes, it is still relevant. Because in this case, the Court, this Court frankly can simply rely upon the testimony and the history that she initially wrote that she just missed a step getting out of the trailer. And if she simply missed a step getting out of the trailer, there are, the Court clearly can determine that that did not arise, there was sufficient evidence for the commission to conclude that this did not arise out of the employment, that this is simply a misstep. But I think this is a personal convenience case. I look back and it's a little bit different, but similar to the case where the employee closes their hand on a car door or the battery explodes and they're jumping a car in the parking lot, this is something that was provided by the employer as a convenience to the employee. They weren't compelled, ordered, or directed or otherwise fulfilling their job duties and going out and visiting the scrubs on wheels. And on that basis, the commission was clear within their province to determine factually that this did not arise out of the course of the employment. And on that basis, the commission decision should be affirmed. There was another injury involved that really wasn't briefed by the other party. There's, I think, sufficient evidence with regard to this December event that Dr. Ayers concluded, my examining physician, that the knee condition was related back to this May event. And since the commission has found that not to be compensable, we would ask, obviously, that the commission decision in that regard be affirmed as well, barring further questions. Thank you. Thank you, counsel. You may reply. Just a couple of things real quickly, Your Honors. I believe that I don't necessarily agree with Mr. Kamen's characterization of this step as a neutral risk. As I previously indicated, I think that this is a situation where my client was exposed to a greater risk than the general public and that would allow her to meet the arising out of test, given that the general public is not, as I previously mentioned, going to be using this scrubs on wheels ban. With that being said, I would ask that you please take into account my previous request, that I feel that the previous rulings by the finders of fact were against the manifest weight of the evidence and you issue an order in accordance with that request. Thank you very much for your time. Thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement. A written disposition shall issue.